UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GEORGE RICHARD SHIU, | ) | 1:03-CV-05202 LJO JMD HC |
| | ) | |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| | ) | |
| EDWARD S. ALAMEIDA, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner is currently on parole and is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently on parole after his confinement at Avenal State Prison by virtue of a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on January 26, 2000, of rape with a foreign object (Cal. Penal Code § 289(d)). (Answer, Ex. 1.) On March 8, 2000, Petitioner received a sentence of three years. (Id.)

On July 18, 2000, Petitioner filed an appeal to the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth DCA"). (Answer, Ex. 2.) On December 10, 2001, the Fifth DCA affirmed the judgment in a reasoned opinion. (Answer, Ex. 3.)

On January 9, 2002, Petitioner filed a petition for review in the California Supreme Court.

1   (Petition, Ex. C.)  On February 27, 2002, the Court denied the petition.  (Petition, Ex. D.)

2       On February 14, 2003, Petitioner filed the instant petition in this Court.  The petition presents
3   the following three grounds for relief: 1) insufficient evidence to support the conviction for rape with
4   a foreign object based on fraud in fact; 2) improper jury instruction on changed intent; and 3)
5   violation of the Sixth and Fourteenth Amendments, as Petitioner was not allowed to cross-examine
6   his accuser regarding the amount of civil damages being sought against him.

7       On June 16, 2003, Respondent filed an answer to the petition.

8       On July 1, 2003, Petitioner filed a traverse to the answer.

9                          **FACTUAL BACKGROUND**[1]

10      Ms. C. regularly received medical care from Petitioner at the Valley Family Care Medical
11  Clinic in the City of Taft.  Petitioner had conducted pelvic examinations on her prior to December
12  1997 that included the insertion of his fingers into her vaginal cavity.

13      On December 1, 1997, Ms. C. visited the clinic complaining of abdominal pain.  She made
14  an appointment to return on Wednesday, December 3 for a pelvic examination and testing.  On
15  December 3, Ms. C. arrived at the clinic for the appointment and was shown into examination room
16  4 by Joanna Gunter, the clinic's medical assistant.  Ms. C. was asked to disrobe and she was given a
17  gown and drape.  She was the only patient examined in room 4 on December 3 and Ms. Gunter had
18  thoroughly cleaned the room the prior day.

19      Ms. C. climbed the step adjoining the examination table and sat on the table wearing only the
20  gown and her socks.  Petitioner entered the room alone and closed the door.  He asked Ms. C. to put
21  her feet in the stirrups attached to the table and to slide her buttocks down to the end of the table.
22  Her legs were spread apart and the drape was over her knees.  Consequently, she could only see
23  Petitioner from the breastbone upwards.

24      Petitioner began to push on Ms. C.'s abdomen asking her where it hurt.  She had covered her
25  eyes with her hands.  At approximately the same time he touched the area that was painful, Ms. C.
26  felt something penetrate her vagina.  It felt smooth, hard, and small.  She was unsure what had been

27
28      [1] The facts, unless otherwise noted, are derived from the factual summary set forth by the Fifth DCA in its opinion
        of December 10, 2001, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1); see Answer, Ex. 3.

1  inserted. She then felt material brush against her inner leg. She uncovered her eyes and looked up at
2  Petitioner who appeared taller than normal and was moving the way men move when they have
3  sexual intercourse. She realized that it was Petitioner's penis inside her. It was moving with a
4  thrusting motion. She was certain that it was not Petitioner's fingers or a speculum. Petitioner
5  withdrew the object from her vagina and she heard the sound of a zipper.

6        Petitioner called for Ms. Gunter to come and assist him. When Ms. Gunter entered, she was
7  surprised to see Ms. C.'s feet were already in stirrups with her genitalia exposed. Ms. Gunter had
8  never before entered an examination room and found a patient in this position. A plastic speculum
9  had been inserted into Ms. C.'s vaginal cavity without an attached light source which was also
10 unusual. Petitioner then performed a hurried and rough digital examination. Ms. Gunter had never
11 seen Petitioner conduct a pelvic examination in such a manner.

12       After the examination, Ms. Gunter began rolling up the used materials that had been placed
13 on a blue plastic paper liner (the roll-up). Petitioner took off his gloves and threw them on the roll-
14 up, which was unusual as he normally tossed his gloves directly into the wastebasket. After
15 Petitioner and Ms. Gunter left, Ms. C. used a tissue to wipe her genitalia and tossed it into the
16 wastebasket. She noticed three drops of a white substance on the step at the foot of the examination
17 table which she thought was semen.

18       Ms. Gunter put the roll-up in the biohazard bin located in the laundry area. There were no
19 paper towels in the roll-up when she put it in the bin. She then went back and tidied examination
20 room 4. She noticed a large wet spot on the paper covering the examination table. She threw the
21 cover in the wastebasket.

22       When Ms. C. arrived home, she spoke with her mother and boyfriend about the incident. She
23 told her mother that she was not certain what Petitioner had placed inside her because she did not see
24 it, but that it felt like his penis. Ms. C.'s boyfriend immediately called the police.

25       Ms. C. was interviewed and taken to Kern Medical Center where Frances Harris, a registered
26 sexual assault nurse examiner, conducted a physical examination and interview. Swabs were taken
27 from the inside and outer edges of Ms. C.'s vagina. Ms. C. told Ms. Harris that it felt like Petitioner
28 had inserted his penis into her but that she was not positive. Ms. C. was certain that she had not been

1   penetrated with a speculum.  Consequently, Ms. Harris, in a form documenting the discussion,
2   checked the box "unsure" next to penis and finger.
3        Later that evening, Criminalists Tammy Trovato-Noe and Jeanne Spencer went to the Taft
4   clinic to take evidence.  They discovered three discolored spots on the rubberized portion of the
5   pullout step of the examination table.  They also detected a spot on the floor and a stain running
6   down the end of the examination table.  They removed some tissues from the wastebasket and a roll-
7   up from the biohazard bin.  Inside the roll-up were a pair of latex gloves, a speculum, and some
8   crumpled paper towels.
9        On the following morning, Lieutenant Hodgson interviewed Petitioner.  During the interview,
10  Petitioner stated that he had masturbated in his office after he finished examining Ms. C.  He
11  ejaculated into some paper towels.  He might have brought the towels into examination room 4 and
12  some of the semen could have dripped.
13       Laboratory tests, including DNA typing, were conducted on the physical evidence.
14  Petitioner's blood type is AB and he is a secretor.  Only 3 to 4 percent of the population have blood
15  type AB and are secretors.  Petitioner has had a vasectomy and, consequently, his semen is aspermic.
16  Ms. C.'s blood type is O.
17       Ms. C.'s internal vaginal swabs did not disclose the presence of semen.  However, the outer
18  vaginal swabs tested positive for acid phosphatase, a substance that is present in semen.  The swabs
19  taken from the spot on the floor, the drip along the front of the examination table, and the step of the
20  examination table all tested positive for two substances indicating that the material was semen.  It
21  was determined that the source of this semen was blood type AB and was a secretor.  There were no
22  sperm cells present in any of the samples.  The specimens taken from the floor and from the
23  examination table step also contained a DNA component that could have come from Ms. C.  Swabs
24  taken from the speculum contained aspermic semen and DNA that could have come from Ms. C.
25  The tissue found in the wastebasket was smeared with aspermic semen and material containing DNA
26  that could have come from Ms. C.
27      <u>Pre-trial and Trial Proceedings</u>
28       Prior to Petitioner's trial, the prosecution sought to exclude any testimony relating to the civil

1  lawsuit Ms. C. had filed against Petitioner.  (CT 1184-85.)  The trial court denied the motion to
2  exclude all testimony relating to the civil suit, but limited any inquiry to the fact that the suit had
3  been filed and that it sought monetary damages.  The court did not allow questioning relating to the
4  amount of damages sought by Ms. C.  (RT 30-31.)

5        At Petitioner's trial, Dr. Frank Elliot testified as an expert gynecologist.  If a patient were to
6  come to him complaining of pain in the lower abdomen, he would palpate the abdomen with the
7  patient lying flat on the table, not with her feet in the stirrups.  He would then conduct an internal
8  examination.  First, a speculum would be inserted and specimens taken.  A digital examination
9  would then be conducted.  The fingers do not push in and out in a thrusting motion.  Unless an
10 emergency arose, he would not touch a female patient until an attendant joined him, and he does not
11 know of any practitioner who conducts unchaperoned pelvic exams in non-emergency situations.

12       Petitioner testified that he did not put his penis or any other object into Ms. C.'s vagina with
13 the intent to arouse or gratify sexual impulses.  Nothing occurred during the examination that
14 aroused him.  On the afternoon in question, the clinic was shorthanded and so he decided to conduct
15 the examination alone.  It would have been physically impossible for him to place his penis inside
16 Ms. C. while standing on the floor.  If he had tried to put his penis inside of her while standing on the
17 step, he would have had to push the drape off her knees and bend down.

18       Petitioner further testified that, after he finished examining Ms. C., he went into examination
19 room 3 and got some paper towels.  He then went into his office, masturbated, and ejaculated into
20 the paper towels.  He placed the towels in the biohazard container.  He did not put them in the roll-
21 up and he did not know why he had told Lieutenant Hodgson that he had done so.

22       It was stipulated that Petitioner's penis is one and three-quarters inches long when flaccid and
23 four inches long when fully erect.  When Petitioner is flat footed, the distance from the base of his
24 penis to the floor is 32 and 1/4 inches; when he stands on the balls of his feet it is 33 and 3/4 inches.
25 Measurements of the height of the exam table varied from 31 and 1/8 inches to 34 inches, depending
26 on the degree the padding was compressed.

27       During its deliberation, the jury sought clarification of a portion of the special instruction
28 applicable to count two–rape with a foreign object.  The jury's question was "if during exam [sic] his

intent changes from examination to sexual gratification, are we looking at unlawful intent[?]" (RT 1049.) The trial court responded as follows:

> The crime of unlawful penetration with a foreign object or with an unknown object requires penetration and a certain specific intent which is defined in your instructions. . . . This intent, that is, that specific intent, may be formed at any time, before or during the commission of the acts which constitute the physical aspect of the crime. Thus, if penetration is occurring and the requisite specific intent is present, and is or becomes the motivation for continued penetration, such penetration with specific intent would constitute the crime of unlawful penetration by a foreign object.

(RT 1049-50.)

The jury found Petitioner not guilty of rape, but guilty of rape with a foreign object. (RT 1052-53.)

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

1  Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

2  The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A

federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claims**

    **A.  Ground One**

Petitioner contends that there is insufficient evidence to support his conviction for rape with a foreign object based on fraud in fact. Petitioner claims that the jury could have only found that he inserted his finger(s), a speculum, or swabs into Ms. C.'s vagina, as the possibility that it found he inserted his penis into Ms. C. was foreclosed by his acquittal on the rape charge and the substance of the jury's question relating to the special instruction applicable to the rape with a foreign object count. Petitioner argues that, because Ms. C. had consented to the insertion of Petitioner's fingers, a speculum, or swabs for purposes of the examination, any fraud perpetrated against her was fraud in the inducement rather than fraud in fact as required by section 289.

This claim was presented in an appeal to the Fifth DCA on July 18, 2000 and the judgment was affirmed in a reasoned opinion on December 10, 2001. (Answer, Exs. 2-3.) It was then raised in a petition to the California Supreme Court which summarily denied the petition. (Petition, Exs. C-D.) The California Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Fifth DCA found that, despite the fact Petitioner was acquitted of rape, there was substantial evidence that he inserted his penis into Ms. C. in violation of section 289. The court noted that each count in the information had to be viewed independently and that Petitioner's acquittal on the rape count therefore had no bearing on determining what facts were found as to the count for rape with a foreign object. The court further found that the fraud in fact requirement was established based on the evidence that Petitioner unlawfully penetrated Ms. C. with his penis without her consent while pretending to conduct a gynecological examination.

In reviewing sufficiency of evidence claims, California courts expressly follow the Jackson standard articulated in Jackson v. Virginia, 443 U.S. 307 (1979); see People v. Johnson, 26 Cal.3d 557, 575-578 (1980); see also People v. Thomas, 2 Cal.4th 489, 513 (1992). Pursuant to the Supreme Court's holding in Jackson, the test to determine whether a factual finding is fairly supported by the record is as follows:

> [W]hether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

Sufficiency of evidence claims are judged by the elements defined by state law. Jackson, 443 U.S. at 324, n.16. This Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir. 1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. Sumner v. Mata, 455 U.S. 539, 597 (1981).

Here, on December 3, 1997, the date of Petitioner's examination of Ms. C., Penal Code section 289(d) provided as follows:

> Every person who causes the penetration, however slight, of the genital or anal openings of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object, and the victim is at the time unconscious of the nature of the act and this is known to the person committing the act or causing the act to be committed, shall be punished

```
        by imprisonment in the state prison for three, six, or eight years. As used in this
        subdivision, "unconscious of the nature of the act" means incapable of resisting
        because the victim meets one of the following conditions:
        (1) Was unconscious or asleep.
        (2) Was not aware, knowing, perceiving, or cognizant that the act occurred.
        (3) Was not aware, knowing, perceiving, or cognizant of the essential characteristics
        of the act due to the perpetrator's fraud in fact.
```

Cal. Penal Code § 289(d) (1997). Section 289(k) provided that "'[u]nknown object' shall include any foreign object, substance, instrument, or device, or any part of the body, including a penis, when it is not known whether penetration was by a penis or by a foreign object, substance, instrument, or device, or by any other part of the body." Cal. Penal Code § 289(k)(2) (1997).

The state court's determination that there was sufficient evidence to support Petitioner's conviction for rape with a foreign object was not unreasonable. Ms. C. testified that Petitioner inserted something that she was unable to identify into her vaginal cavity, that she felt thrusting motions, that Petitioner was making motions like those made by men when they are having sexual intercourse, that she felt fabric brush up against her leg, and that, after the object was removed, she heard the sound of a zipper. (RT 84-86.) Further, the vaginal swabs and speculum tested positive for a substance present in semen and the tissues that Ms. C. used to wipe herself with after the examination contained aspermic semen. (RT 95, 180-81, 438-39, 444.) In each case, the semen matched Petitioner's blood type and secretor and fertility status. (RT 454, 551.) The semen stains at the foot of the examination table were also consistent with Petitioner's blood type and secretor status and contained components that could have come from Ms. C. (RT 430-35.) This evidence was sufficient for the jury to find that Petitioner penetrated Ms. C. for the purpose of sexual arousal or gratification.

Further, there was sufficient evidence for the jury to conclude that the object inserted into Ms. C. was an unknown object, as defined in Section 289(k)(2). Ms. C. testified that a sheet obscured her view of Petitioner below the breastbone during the examination and that she told her mother she was unsure what had been inserted and Nurse Harris testified that Ms. C. told her that she was unsure what had been inserted. (RT 81-82, 140-41, 366-67.) There was also sufficient evidence for the jury to find that Ms. C. was unaware of the essential characteristics of the act due to Petitioner's fraud in fact, as there was evidence that Petitioner inserted his penis into Ms. C. while

pretending to conduct a gynecological examination.

Petitioner's argument that his acquittal for rape forecloses the possibility that the jury found he committed an unlawful penetration with his penis does not compel a different result. The acquittal on the rape count has no impact on the sufficiency of the evidence supporting the conviction for rape with a foreign object. People v. Brown, 174 Cal.App.3d 762, 769 (1985) ("The statutory language of Penal Code section 954 means that each count of an information must stand upon its own merit and be weighed separately in its disposition; a verdict of either conviction or acquittal upon one count has no bearing upon the verdict with respect to another count."); see also U.S. v. Powell 469 U.S. 57, 61-69 (1984). Similarly, Petitioner's argument that the jury's inquiry regarding the special instruction shows that it did not convict him based on the unlawful penetration by his penis is purely speculative. The jury's inquiry does not foreclose the possibility that it found that Petitioner inserted his penis as the foreign object.

**B.  Ground Two**

Petitioner contends that, in response to the jury's inquiry relating to the special instruction, the trial court misinstructed it regarding the law applicable to the situation where a specific unlawful intent is formed only after an act has begun. Petitioner argues that the law applicable at the time of Ms. C.'s examination was that a violation of section 289 could not occur unless the unlawful intent was present when the act began.

This claim was presented in an appeal to the Fifth DCA on July 18, 2000 and the judgment was affirmed in a reasoned opinion on December 10, 2001. (Answer, Exs. 2-3.) It was then raised in a petition to the California Supreme Court which summarily denied the petition. (Petition, Exs. C-D.) The California Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In denying Petitioner's appeal, the Fifth DCA found that the primary case relied on by Petitioner, People v. Vela, 172 Cal.App.3d 237 (1985), was distinguishable because it dealt with a woman who initially consented to sexual intercourse, then withdrew consent during the act. In contrast, Ms. C. only consented to the insertion of Petitioner's fingers and medical instruments for

purposes of an examination, not the insertion of Petitioner's penis. The court further distinguished Vela finding that it dealt with withdrawn consent by the victim rather than a change in the perpetrator's intent. The Fifth DCA then found that, in any case, there was no prejudice to Petitioner because the trial court's answer to the jury's question was non-responsive and had no application to the evidence or theories presented by the parties.

This Court's review is limited to determining whether the state court unreasonably applied clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1); Delgado v. Lewis, 223 F.3d at 979-80. Admission of evidence and instructions of state law are a state law concern, not cognizable in federal habeas proceedings unless the state trial court's decision is error rising to the level of a due process violation. Estelle v. McGuire, 502 U.S. 62, 67 (1991). Constitutional Due Process requires that the State prove all elements of the offense charged and all facts necessary to establish each of those elements beyond a reasonable doubt. See Sullivan v. Louisiana, 508 U.S. 275, 277-78; U.S. Const., amends. V, VI, XIV. In evaluating jury instructions, the federal court looks to the context of the overall charge to the jury as a component of the entire trial process to determine whether the instructions in question so infected the entire trial process such that the resulting conviction violates due process rendering the trial fundamentally unfair. Id. at 72; see also United States v. Frazin, 780 F.2d 1461, 1468 (9th Cir), *cert. denied* 479 U.S. 844 (1986).

The instruction in question did not so infect the trial process that the resulting conviction violated Petitioner's due process rights. In People v. Vela,, the case on which Petitioner bases his argument that the instruction violated his due process rights, the California Court of Appeal held that a rape could not occur where a female initially consented to sexual intercourse, then subsequently withdrew the consent during the intercourse. People v. Vela, 172 Cal.App.3d 237, 242-44 (1985). Here, in contrast, it is undisputed that Ms. C. did not consent to sexual intercourse at any time prior to or during the examination. Further, the instruction at issue addressed only the shifting intent of Petitioner, not the withdraw of consent by Ms. C. Petitioner has therefore failed to show that the instruction in question violated his due process rights, as the holding in Vela was not applicable to the facts of his case.

### C. Ground Three

Petitioner contends that his rights under the Confrontation Clause and his Sixth and Fourteenth Amendment rights to present defense evidence of significant value were violated when the trial court ruled that he could not cross-examine Ms. C. regarding the specific amount of damages she sought against him in a civil lawsuit. Petitioner argues that the amount of damages was relevant to show Ms. C.'s motive to lie about what had occurred during the gynecological examination.

This claim was presented in an appeal to the Fifth DCA on July 18, 2000 and the judgment was affirmed in a reasoned opinion on December 10, 2001. (Answer, Exs. 2-3.) It was then raised in a petition to the California Supreme Court which summarily denied the petition. (Petition, Exs. C-D.) The California Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In denying Petitioner's appeal, the Fifth DCA found that the trial court properly excluded the evidence, as the specific amount of damages sought had minimal probative value given the fact that Petitioner was permitted to question Ms. C. about the filing of the lawsuit. The Fifth DCA found that the trial court properly exercised its discretion in concluding that the relevance of the specific amount of damages being sought was outweighed by the potential for prejudice.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. . . . Of particular relevance here, [w]e have recognized that the exposure of a witness'[s] motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. [Citation] It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986)

(quotation marks omitted).

"Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected. [Citation] The state court's decision to exclude certain evidence must be so prejudicial as to jeopardize the defendant's due process rights. [Citation] To evaluate whether exclusion of evidence reaches constitutional proportions, we should consider five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. [Citation] We must then balance the importance of the evidence against the state interest in exclusion." Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir. 1990).

The trial court's exclusion of the amount of damages sought in the civil lawsuit did not violate Petitioner's rights under the Confrontation Clause nor was it so prejudicial as to jeopardize Petitioner's due process rights. The court permitted Petitioner's counsel to question Ms. C. about the fact that the civil suit had been filed against Petitioner and counsel did so. (RT 30-31, 165-66.) The evidence of the amount of damages being sought was therefore merely cumulative, as the jury had sufficient information to consider Ms. C.'s motivation to fabricate the allegations against Petitioner for financial gain.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the

1 objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
2 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may
3 waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5 IT IS SO ORDERED.

6 **Dated:   June 5, 2008**            /s/ **John M. Dixon**
UNITED STATES MAGISTRATE JUDGE